FILED
2023 Jun-06  AM 07:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| LAJUANNA BOWLES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  5:21-cv-01624-HNJ |
| | ) | |
| RUMPH & ASSOCIATES, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On December 7, 2021, Plaintiff Lajuanna Bowles filed a *pro se* Complaint.  (Doc. 1).  She claimed Thomas Rumph, her former employer's Managing Partner, and Vastell Williams, her former employer's Finance Manager, terminated her employment, failed to accommodate her disability, and subjected her to unequal terms and conditions of employment because of her pregnancy and post-partum depression.  She asserted a claim for discrimination on the basis of gender.  (*Id.* at 2, 5).  She did not name her former employer, Rumph & Associates, as a Defendant.

On October 4, 2022, the court informed Bowles her claims could not proceed against individual Defendants Rumph and Vastell as the statutes governing her discrimination claims apply only to employers, not to individual employees.  The court ordered Bowles to file an Amended Complaint within 21 days to assert her claims against an appropriate Defendant.  (Doc. 11).

On October 25, 2022, Bowles filed a *pro se* Amended Complaint.  (Doc. 12).  The Amended Complaint omitted all claims against Rumph and Williams as individuals, and instead named Rumph & Associates as the sole Defendant.  The Amended Complaint encompassed the same factual allegations as the original Complaint.  Bowles again asserted that Defendant terminated her employment, failed to accommodate her disability, and subjected her to unequal terms and conditions of employment.  She checked a box to identify Title VII of the Civil Rights Act of 1964, as amended (Title VII), as a basis for jurisdiction, and she claimed that Defendant discriminated against her on the basis of gender/sex because of her pregnancy and post-partum depression.  She did not explicitly indicate she intended to assert a claim for disability discrimination under the Americans with Disabilities Act.

On November 21, 2022, Rumph & Associates answered the Amended Complaint.  (Doc. 16).

On March 22, 2023, an attorney appeared for Bowles.  (Doc. 30).

On March 24, 2023, the court entered a Scheduling Order stating, in pertinent part, that "[n]o causes of action, defenses, or parties may be added by plaintiff after August 16, 2023."  (Doc. 33, ¶ 1).

On April 17, 2023, Bowles, through her attorney, filed a motion for leave to file a Second Amended Complaint, seeking to clarify her allegations through counsel.  The proposed Second Amended Complaint explicitly asserts claims for discrimination under both Title VII and the ADA.  It also adds claims for retaliation under both statutes.

(Doc. 34).

Rumph & Associates partially opposes the motion. It consents to Bowles clarifying her allegations of discrimination under Title VII and the ADA, but it objects to the Second Amended Complaint asserting allegations of retaliation, as it contends Bowles did not exhaust her administrative remedies with respect to those allegations, and Bowles did not timely file the retaliation claim in this action. Thus, according to Rumph & Associates, the amendment to add retaliation claims would constitute an exercise in futility. (Doc. 36).

For the reasons discussed herein, Bowles's proposed amendments would not prove futile, and the court will grant the motion for leave to file the Second Amended Complaint.

## DISCUSSION

Federal Rule of Civil Procedure 15 governs amended and supplemental pleadings. Absent circumstances not relevant here,[1] a party may amend the pleadings only by leave of the court or the adverse party's written consent. *See* Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* "'[U]nless a substantial reason exists to deny leave to amend, the discretion of the District Court is

---

[1] A party may amend its pleading once as a matter of course within 21 days after serving it, or within 21 days after an opposing party serves a required responsive pleading or motion. Fed. R. Civ. P. 15(a)(2). Bowles already amended the Complaint once, and she did not request leave to file another amendment within 21 days of serving the previous Complaint, or within 21 days of a responsive pleading.

3

not broad enough to permit denial.'" *Fla. Evergreen Foliage v. E.I. DuPont De Nemours and Co.*, 470 F.3d 1036, 1041 (11th Cir. 2006) (quoting *Shipner v. E. AirLines,* 868 F.2d 401, 407 (11th Cir. 1989)) (alteration in original).

However, "a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262-63 (11th Cir. 2004) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)). Futility ensues "when the complaint as amended is still subject to dismissal." *Id.* at 1263 (citing *Burger King Corp. v. Weaver,* 169 F.3d 1310, 1320 (11th Cir. 1999)) (citation omitted).

## I. As Bowles Properly Exhausted Administrative Remedies for Her Retaliation Claims, the Purported Failure-to-Exhaust Contention Does Not Render Her Proposed Second Amended Complaint Futile

An employee must exhaust administrative remedies before filing a complaint of discrimination under Title VII of the Civil Rights Act and Title I of the Americans with Disabilities Act. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001) (Title VII); *see Maynard v. Pneumatic Prods. Corp.*, 256 F.3d 1259, 1262 (11th Cir. 2001) (Americans with Disabilities Act). "The first step down th[e] path [to exhaustion] is filing a timely charge of discrimination with the [Equal Employment Opportunity Commission (EEOC)]." *Wilkerson*, 270 F.3d at 1317. If the Commission determines after an investigation "that there is not reasonable cause to believe that the charge is true, it shall dismiss the charge and promptly notify" the employee. 42 U.S.C. § 2000e-5(b). When the employee receives a notice of dismissal from the Commission, she has 90 days to file a civil action against the employer. *Id.* § 2000e-5(f)(1).

*Stamper v. Duval Cty. Sch. Bd.*, 863 F.3d 1336, 1339-40 (11th Cir. 2017) (first and second alterations in original); *see also Santini v. Cleveland Clinic Fla.,* 232 F.3d 823, 825 (11th Cir. 2000) ("Title VII . . . actions may not be brought more than 90 days after a complainant

4

has adequate notice that the EEOC has dismissed the Charge.") (citing *Zillyette v. Capital One Fin. Corp.,* 179 F.3d 1337, 1339-41 (11th Cir. 1999)); *Zillyette,* 179 F.3d at 1339 ("It is settled law that, under the ADA, plaintiffs must comply with the same procedural requirements to sue as exist under Title VII of the Civil Rights Act of 1964.").

Stemming from the requirement that a Title VII plaintiff must exhaust administrative remedies, courts must limit judicial claims to "the scope of the investigation that could reasonably have been expected to flow from the [Plaintiff's] EEOC charge." *Swindle v. Jefferson Cnty. Comm'n,* 593 F. App'x 919, 925 (11th Cir. 2014) (citing *Gregory v. Georgia Dep't of Hum. Res.,* 355 F.3d 1277, 1279-80 (11th Cir. 2004)). Even so, courts should not strictly construe EEOC charges. While courts should not allow a plaintiff to assert new acts of discrimination in a judicial complaint, they should permit a judicial claim that "'serve[s] to amplify, clarify, or more clearly focus earlier EEO[C] complaints.'" *Id.* at 926 (quoting *Gregory,* 355 F.3d at 1279-80; *Wu v. Thomas,* 863 F.2d 1543, 1547 (11th Cir. 1989); *Ray v. Freeman,* 626 F.2d 439, 443 (5th Cir. 1980)) (alterations in original).

Therefore, if Bowles failed to exhaust all administrative remedies regarding retaliation, or if she attempts to assert retaliation claims that exceed the scope of her EEOC charge, amending her Complaint to assert retaliation claims would prove futile.

Bowles initially contacted the EEOC on October 22, 2019, by submitting a typed, hand-signed statement and a typed timeline of events. She stated: "I want to file a charge against Rumph & Associates . . . for discrimination against pregnancy,

5

gestational diabetes, and postpartum depression that resulted in unlawful termination on 05/02/2019." (Doc. 6, at 4). She explained she experienced different treatment beginning January 22, 2019, immediately upon returning from short-term disability leave for her pregnancy. (*Id.* at 5). The alleged, different treatment included an increased workload; the requirement to document time off when others did not have to do so; denial of a health care stipend and preapproved paid time off; requests not to document overtime or weekend hours; aggressive tones from management employees; office isolation; delayed delivery of documents necessary for her job; and denial of work from home privileges. (*Id.*).

On March 27, 2019, Defendant allegedly denied accommodations for Bowles's asserted, post-partum depression. (*Id.*)

On April 18, 2019, Bowles met with a human resources representative to request work-from-home privileges due to her inability to concentrate. She also informed the representative of the alleged, unprofessional treatment she had experienced, including:

> A.) The HSV office regularly work from home, at times by the request of management and at times by the request of employees. However, for unforeseen reasons the day before I worked from home and was forced to use PTO.
>
> B.) My direct manager, Vastell Williams[,] had begun the use of [an] aggressive tone and body language with me during meetings. At times getting so angry that his hands would shake.
>
> C.) My workload had been increased to cover accounting manager and staff accountant[']s role.

      D.)     My PTO request had been cancelled without reason.

      E.)     Vastell, [*sic*] stopped speaking in the morning as he previously would and Tom stopped including me in office lunches and dinners.

      F.)     I explained that my superior had begun being excessively loud in the office causing a disruption from my task by playing loud videos and games. To the extent of me needing to occasionally work from home.

      G.)     Our CEO, [*sic*] had called the office and informed me that I didn't need to "Cover MY OWN ASS", as I send emails to confirm verbal conversations.

(*Id.* at 5-6) (capitalization in original).

On that same date, the human resources representative discussed Bowles's disability in a non-work-related meeting, suggested Bowles undergo cognitive therapy, and stated she would consider a reasonable accommodation if she received a letter from Bowles's doctor. Shortly after the April 18, 2019, meeting, a management employee asked Bowles to document her recommendations for improving the accounting and finance department by 10:00 a.m. the following day, but Bowles did not receive a request for documentation of any other situations discussed in the meeting. (*Id.* at 6).

On April 23, 2019, Bowles returned to work, but Defendant placed her on administrative leave and seized her company laptop and keys. (Doc. 6, at 6).

On April 25, 2019, Defendant asked her to release the company from legal liabilities and agree to confidentiality in exchange for a monetary payment and healthcare. Bowles declined that request. (*Id.*).

On May 1, 2019, Bowles inquired by email regarding the status of her employment, and she requested to view her employee file. (*Id.*).

On May 2, 2019, Defendant asked Bowles to return to the office for another meeting, during which Williams again asked her to sign a release form.  When Bowles declined to sign, Defendant terminated her employment effective immediately, and it did not provide a reason for the termination.  (*Id.*).

On May 3, 2019, Bowles met with the human resources representative, who allowed Bowles to view her file and again asked Bowles to sign a release.  Bowles again declined to sign the release, and the human resources employee denied Bowles's request to obtain a copy of her file.  (*Id.*).

Bowles states she never received any disciplinary write-ups or criticism of her job performance throughout her employment until Defendant placed her on involuntary leave and terminated her.  (*Id.* at 7).

Bowles filed a formal EEOC charge on April 30, 2021.  (Doc. 6, at 2).[2]  In her Reply regarding the issues at bar, she states the EEOC "eventually sent her a formal Charge form to sign dated April 30, 2021, that is obviously drafted by an employee of the EEOC."  (Doc. 37, ¶ 8).  The formal charge included as attachments Bowles's October 22, 2019, statement and timeline of events.  (Doc. 6, at 4-7).  The charge form

---

[2] The record does not explain the lapse of time between Bowles's initiation of EEOC contact on October 22, 2019, and the filing of a formal charge on April 30, 2021.

includes check marks on boxes indicating Bowles asserted discrimination based on sex and disability, but it includes no check mark on the box for retaliation.  (*Id.* at 2).

Nevertheless, the failure to check the retaliation box does not preclude Bowles's retaliation claim, as the factual allegations supporting her charge reasonably encompass retaliation averments.  An EEOC officer investigating Bowles's charge could easily discern the alleged specter of retaliation: Bowles alleged she began experiencing differential treatment immediately after returning from short-term disability leave for pregnancy; Defendant placed her on administrative leave five days after she complained of the differential treatment; Defendant terminated her employment two weeks after her complaints; and the termination decision served as the foundation for both the retaliation claims and the claims Bowles previously asserted.  *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006) (A material action supporting a retaliation claim manifests if it "could well dissuade a reasonable worker from making or supporting a charge of discrimination."); *Patterson v. Georgia Pac., LLC*, 38 F.4th 1336, 1352 (11th Cir. 2022) (citations omitted) ("The general rule is that close temporal proximity between the employee's protected conduct and the [adverse action] is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection.") (alteration in original); *Batson v. Salvation Army*, 897 F.3d 1320, 1328 (11th Cir. 2018) (Plaintiff's EEOC charge allegations sufficiently related to her later retaliation claim to satisfy the exhaustion requirement as "her ADA failure to accommodate claim is inextricably linked to her ADA retaliation claim, because her accommodation request

was the basis for [the employer's] retaliation against her, and her termination, mentioned in the Charge, was the specific form the retaliation took."); *Gregory*, 355 F.3d at 1280 (Plaintiff's failure to check the box for retaliation on an EEOC charge did not preclude a subsequent retaliation cause of action when the Plaintiff "stated facts from which a reasonable EEOC investigator could have concluded that what she had complained about is retaliation because of her complaints of Dr. Fuller's disparate treatment to the hospital's administration. Specifically, shortly after being subjected to certain allegedly discriminatory acts, she was terminated.").

The parties dispute whether an attorney represented Bowles when she filed her charge. Defendant asserts Bowles enjoyed representation, as the EEOC sent a copy of the September 8, 2021, Dismissal and Notice of Rights to an attorney. (*See* Doc. 1, at 11). Conversely, Bowles claims the charge itself demonstrates she did not have representation on the date of filing, as the charge document does not include an attorney's name or address, Bowles's attachments to the charge document appear to be drafted by a layperson, and the attachments bear a printer heading from the Madison Public Library, indicating Bowles likely produced the attachments herself. Moreover, Bowles maintains in her Reply that "[a]s discovery proceeds, it will be clear that the Plaintiff did file this Charge unrepresented by an attorney." (Doc. 37, at 2 n.1).

The court cannot resolve the factual dispute over Bowles's representation at the pleadings stage, as the record does not clearly portray Bowles's representation status at the time she filed the charge, and the court must construe all allegations in Bowles's

favor.  However, even if an attorney represented Bowles when she filed her charge, the charge still would encompass potential retaliation allegations.  Though courts construe *pro se* plaintiffs' EEOC charges more broadly than those filed by represented parties, *Jerome v. Marriott Residence Inn Barcelo Crestline/AIG*, 211 F. App'x 844, 846 (11ᵗʰ Cir. 2006), a plaintiff's ability to assert judicial claims within the scope of the EEOC's reasonably expected investigation of the charge persists regardless of the plaintiff's representation status.  *See Gregory*, 355 F.3d at 1280 (plaintiff prepared EEOC charge without assistance of counsel); *Patterson,* 38 F.4th at 1343, 1345-46 (applying *Gregory* when an attorney represented the plaintiff at the EEOC stage).

In summary, as the attachments to Bowles's EEOC charge reasonably encompass allegations of retaliation, Bowles exhausted the administrative remedies for her retaliation claims.  The purported failure-to-exhaust contention will not render her attempted amendment futile.

## II.    As the Retaliation Claims in Bowles's Proposed Second Amended Complaint Relate Back to Her Timely-Filed Original Pleading, the Statute of Limitations Does Not Render the Amendment Futile

Defendant also contends the pertinent limitations period would preclude pursuit of Bowles's retaliation claims in this action, even if Bowles's EEOC charge encompassed those claims.[3]

Courts routinely disallow amended pleadings when proposed new claims run

---

[3] Defendant raised this argument in its response to Bowles's motion to amend her complaint (Doc. 36), yet Bowles did not address the argument in her reply brief.  (Doc. 37).

afoul of a statute of limitations. *See Moore v. Baker*, 989 F.2d 1129, 1131-32 (11th Cir. 1993) (denying amendment as futile because statute of limitations expired); *Presnell v. Paulding Cnty., Ga.*, 454 F. App'x 763, 768 (11th Cir. 2011) (holding the district court did not abuse its discretion in denying Plaintiff's motion to add new parties, as the claims would have been barred by the statute of limitations, and thus the amendment was futile); *Adams v. Kellett*, 360 F. App'x 67, 70 (11th Cir. 2010) ("[E]ven if Plaintiffs had followed the proper procedures in seeking leave to amend, such an amendment would have been futile because the claims that Plaintiffs seek to add would also be time-barred."); *Foster v. State Auto Property and Casualty Company*, No. 2:09-cv-0620-SLB, 2010 WL 11561710, at *1 (N.D. Ala. Mar. 14, 2010) ("In denying Foster's Motion to Amend the Complaint, the court found that the proposed claims were barred by the applicable statute of limitations, and therefore futile.").

On September 8, 2021, the EEOC issued a Dismissal and Notice of Rights. (Doc. 1, at 11-13). The EEOC did not render a determination on the merits of Bowles's charge, and it declined to proceed any further with its investigation. It informed Bowles of her right to file suit within 90 days of her receipt of notice, or by December 7, 2021. Bowles filed her initial complaint in this action on the last day of the limitations period, rendering the claims in the initial pleading timely. However, she did not seek leave to add retaliation claims until April 17, 2023, 586 days after the EEOC's Notice of Rights. Thus, the statute of limitations normally would bar the retaliation claims.

However, the limitations period does not forestall Bowles's retaliation claims because they relate back to the filing date of her timely-filed original complaint. Pursuant to Federal Rule of Civil Procedure 15(c), "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "A critical issue in determining whether an amendment relates back to the original complaint is whether the original complaint gave the defendant notice of the claim asserted in the amendment." *Walker v. Fulton Cnty. Sch. Dist.*, 624 F. App'x 683, 686 (11th Cir. 2015)) (citing *Moore,* 989 F.2d at 1131).

As previously described, the original and amended Complaints both encompassed allegations Bowles experienced differential treatment immediately after returning from short-term disability leave for her pregnancy; Defendant placed Bowles on administrative leave five days after she complained of the differential treatment; and Defendant terminated Bowles's employment two weeks after her complaints. The proposed Second Amended Complaint encompasses the same factual allegations. (Doc. 34, at 8-11, ¶¶ 15-36). Consequently, the original and amended Complaints placed Defendant on adequate notice of potential retaliation claims that Bowles now proposes to assert in the Second Amended Complaint, and thus, the retaliation claims relate back to the date of the timely-filed previous pleadings. *See Rodriguez v. Cnty.,* No. 8:15-CV-1621-T-23AAS, 2017 WL 397594, at *2 (M.D. Fla. Jan. 30, 2017) (retaliation

claim related back to race and nationality discrimination claims in original pleading when the allegations were "intertwined and involve similar conduct"); *McLean-Pilliner v. Univ. of S. Fla. Bd. of Trustees*, No. 8:16-CV-2014-17AEP, 2016 WL 6514104, at *2 (M.D. Fla. Nov. 1, 2016) (retaliation claim related back to original pleading when "both complaints lay the factual groundwork for a retaliation claim by alleging that Plaintiff was terminated in very close proximity to her complaints of discrimination"); *Stephens v. Atlanta Indep. Sch. Sys.*, No. 1:13-CV-978-WSD, 2013 WL 6148099, at *3 (N.D. Ga. Nov. 22, 2013) (retaliation claim in amended complaint related back when it "ar[ose] out of the occurrences alleged in the Original Complaint"); *cf. Walker*, 624 F. App'x at 685-86 (retaliation claim in amended complaint did not relate back to original pleading when original pleading did not mention the protected conduct alleged in the amended complaint or the alleged adverse actions taken by the employer).

As the retaliation claims in Bowles's proposed Second Amended Complaint relate back to her timely-filed prior pleadings, the statute of limitations does not bar the retaliation claims, and thus, the amendment does not present an exercise in futility.

## CONCLUSION AND ORDER

In accordance with the foregoing review, the court concludes Bowles's proposed Second Amendment Complaint survives Defendant's challenges for a purported failure to exhaust remedies and timeliness. Thus, the amendment would not constitute an exercise in futility, and the court **GRANTS** Bowles's motion for leave to file a Second Amended Complaint. Bowles must file a Second Amended Complaint, identical to the

proposed Second Amended Complaint appended to Bowles's motion for leave, within

three (3) days of the date of this order.

      **DONE** and **ORDERED** this 5th day of June, 2023.

                               HERMAN N. JOHNSON, JR.
                               UNITED STATES MAGISTRATE JUDGE